U S DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

OCT 19 2004

ROBERT H. SHEMWELL, CLERK
BY_____
            DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **HEATHER LEHMAN, ET AL** | : | **DOCKET NO.: 2:03cv 1432** |
| **VS.** | : | **JUDGE MINALDI** |
| **CHERYL M. LEICHLITER, ET AL** | : | **MAGISTRATE JUDGE WILSON** |

## OPPOSITION TO MOTION TO
## STRIKE PLAINTIFF'S EXPERT

**NOW INTO COURT,** through undersigned counsel, comes complainant, Heather Lehman, Heather Lehman, individually, Billie J. Lehman and Colleen Peck, individually and on behalf of their deceased son, William Matthew Lehman, who file this Memorandum in opposition to Defendants motion to strike Melvin L. Tucker:

Defendants argue Melvin Tucker should be stricken as an expert witness because the use of 20/20 hindsight is disfavored by our jurisprudence. The next argument is that the jury, without the assistance of a police expert, can adequately perform an evaluation of the reasonableness of Officer Leichliter's use of deadly force by refusing to use pepper spray and shooting William Matthew Lehman in the back on June 24, 2002. Defendants last argument, if it can be called an argument, is that Mr. Tucker's opinions are nothing more than subjective belief and unsupported conjecture.

1

1.  **OBJECTIVE REASONABLENESS**

Defendant's selectively argue that Mr. Tucker's report "criticizes the officer's conduct on June 24, 2002 by resorting to the use of "20/20 hindsight" expressly forbidden by the United States Supreme Court", citing *Graham v. O'Conner*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed2 443 (1989). The United States Supreme Court also clearly stated in "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham, supra*. Defendants didn't address the real argument of whether or not the officer's actions were "objectively reasonable" as is the true test of whether there has been a violation of the Fourth Amendment. In *Graham, supra* the United States Supreme Court held,

> the "reasonableness" inquiry in an excessive force case in an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. See *Scott v. United States*, 436 U.S. 128, 137-139 (1978); see also *Terry v. Ohio*, supra, at 21 (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard").

Accordingly, when evaluating a police officer's use of force to determine if it was "objectively reasonable," the analyst must determine if other reasonably prudent officers, presented with the same or similar circumstances, would have responded the same way. This "reasonable officer" standard is an objective test. This is exactly the test Mr. Tucker utilized in conducting his analysis as reflected in his report.

## 2. EXPERT IS NECESSARY IN THIS MATTER

In regards to the defendant's second argument that jurors untrained in law enforcement would be able to determine the "objective reasonableness" of Leichliter's use of deadly force against William Lehman without the assistance of a law enforcement expert, one would have to make the assumption that jurors are familiar with oleoresin capsicum (OC) and are also aware of the research that has proven it to be effective 90% of the time when used against humans during confrontational encounters. This is not an assumption that one can realistically make.

Further, one would have to make the assumption that jurors are familiar with an ASP (police baton) and its high level of effectiveness when used properly against humans during confrontational encounters. This is also an assumption that cannot be realistically made.

In addition, one would have to make the assumption that jurors are familiar with law enforcement protocols on how to respond to potentially violent suspects, specifically, the protocol s of learning about the suspect from associates and waiting for superiority of manpower to minimize risks to the officer. This is also an assumption that cannot be realistically made.

Finally, one would have to make the assumption that jurors are familiar with the areas covered in police officer use of force training programs. In particular, one would have to assume that jurors are aware of the use of force training modules regarding controlling and recognizing unreasonable fear to keep from overreacting to suspect actions. It is during these training sessions that officers are made aware of the risks of serious bodily injury or death (the statistics that defendants cite as obscure). This is also an assumption that cannot be realistically made.

3

In their Motion to Strike Mr. Tucker, Defendants' state, "the testimony of a law enforcement expert is unnecessary and inappropriate in this case." It is ironic and puzzling that after filing this Motion, Defendants have now submitted two expert reports, one of which is only an affidavit.

3.  **MELVIN TUCKER'S OPINIONS**

In response to Defendant's accusation that Mr. Tucker's opinions are nothing more than subjective belief and unsupported conjecture. Plaintiff's are appalled at this ridiculous argument and one only has to look at Mr. Tucker's report to see that Defendants statement is totally off-base.

Mr. Tucker supported his first opinion that Officer Leichliter's use of deadly force on Mr. Lehman on June 24, 2002 was not objectively reasonable lists ten items of support including the facts that Leichliter did not make her decision to use deadly force because of a belief that Lehman had a gun because she was going to shoot him even if he didn't have a gun and Leichliter's violation of the Lake Charles Police Department General Order on the Use of Force.

In developing his opinions, Mr. Tucker explained on page two of his report that he reviewed the list of materials attached to his report as Appendix "C" and developed a set of material facts which he then analyzed against a backdrop of the professional standards, practices, principles and protocols recognized in the law enforcement profession on the date of this incident. His methodology has been accepted over forty times by presiding judges in previous cases in which he has testified as an expert.

For example, in <u>Patrice Sharp v. Houston Police Department, et. al.,</u> the presiding federal judge accepted Mr. Tucker's expert testimony, the jury rendered a

4

decision in favor of the plaintiff, and the decision of the jury was unanimously affirmed by the 5th Circuit Court of Appeals which quoted liberally from the testimony and expert report of Mr. Tucker.

In addition, Mr. Tucker's expert reports have been used as a model in a treatise on the subject of experts. See, <u>The Comprehensive Services Manual, The Essential Resources for All Experts</u>, Babitsky, et al, (SEAK, Inc. 2000).

The testimony that will be offered through Mr. Tucker is neither novel nor is it reaching conclusions of law. Instead it involves data, statistics and insight into how and when to use oloeorisn capsicum, and its effectiveness along with an analysis of police procedures, and whether they complied with appropriate standards and protocols for law enforcement in effect in 2002.

Mr. Tucker's qualifications as a law enforcement expert are clearly established by his CV that was attached as Appendix "A" to his report. Plaintiffs respectfully submit that they have made an appropriate showing of the (1) the expertise of Mr. Tucker; (2) the relevance of Mr. Tucker's properly supported opinions to the jury; and (3) that the opinions of Mr. Tucker concern matters beyond the common knowledge of the jurors, which will aid the jurors in reaching their decision.

For the foregoing reasons, Plaintiff's respectfully submit this Honorable Court deny Defendants Motion to Strike Melvin L. Tucker.

Respectfully submitted:

**L. CLAYTON BURGESS, A P.L.C.**
605 West Congress Street
Post Office Drawer 5250
Lafayette, Louisiana 70502-5250
Telephone: (337) 234-7573

_____
**L. CLAYTON BURGESS** (#22979)
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has this date been forwarded to all known counsel of record via facsimile and/or by depositing a copy of same in the United States Mail, postage prepaid and properly addressed.

Lafayette, Louisiana, this ___ day of October, 2004.

_____
L. CLAYTON BURGESS

6



*Licensed to practice in Louisiana and Texas*

RECEIVED
OCT 19 2004
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

October 19, 2004

Deputy Clerk-in-Charge
United States District Court
800 Lafayette Street, Suite 2100
Lafayette, Louisiana 70501

      RE:    **Heather Lehman, et al vs. Cheryl M. Leichliter, et al**
             **Docket No.: 2:03cv 1432**
             **Our File No.: 11278**

Dear Clerk:

     Enclosed please find the original and one (1) copy of the plaintiffs' ***Opposition to Motion to Strike Plaintiff's Expert*** in regards to the above captioned matter. I am herein forwarding same to you for filing into the record of this matter. It would be greatly appreciated if you could return a conformed copy of same to my office.

     Should you have any questions, please feel free to contact my office.

     Thanking you in advance for your assistance in this matter, I remain,

                                            Sincerely,

                                            L. CLAYTON BURGESS

LCB/mjl
Enclosures

CC:    Mr. Chris John
          Mr. James Pate
          Judge Minaldi