U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED
NOV 3 0 2004
ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| HEATHER E. LEHMAN, ET AL | : | DOCKET NO. 2:03 CV 1432 |
|---|---|---|
| VERSUS | : | JUDGE MINALDI |
| CHERYL M. LEICHLITER, ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court is defendant's motion to exclude plaintiffs' expert, Melvin L. Tucker, from testifying at trial. (Doc. 31). Also before the court is plaintiffs' motion to exclude defendants' experts, George Armbruster and Frank Adams, from testifying at trial. (Doc. 39). A telephone conference was held in order to hear argument of counsel.

Plaintiffs have asserted claims pursuant to 42 U.S.C. §§ 1983 & 1988 and Louisiana Civil Code Article 2315. The claims arise out of the death of William Lehman. Mr. Lehman died as a result of gun shot wounds suffered when he was shot by defendant, Cheryl Leichliter, a Lake Charles police officer.

Defendants rely on F.R.E. 403 & 702 in seeking to exclude the testimony of Mr. Tucker. Plaintiffs contend that defendants experts should be excluded because their reports do not comply with the requirements of F.R.C.P. 26.

The Fifth Circuit has made it perfectly clear that trial courts are expected to scrutinize carefully the need for expert testimony noting that "it is time to take hold of expert testimony in federal trials." *Eymard v. Pan American World Airways, Inc.*, 795 F.2d 1230, 1234 (5th Cir. 1986). It is not sufficient for this court to simply allow such expert testimony based on a

reliance upon the jury give the testimony "the weight it deserves." *In Re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986).

Fed.R.Evid. 702 allows expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

> "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."

Advisory Committee Notes to Rule 702. (quoting Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418(1952)).

Fed.R.Evid. 403 provides that otherwise relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403 serves a general screening function "for evidence that would otherwise be admissible." *Christophersen v. Allied-Signal Corporation*, 939 F.2d 1106, 1112 (5th Cir. 1991)(en banc), *overruled on other grounds, Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 n. 5, 113 S.Ct. 2786 (1993).

Therefore, the motions presently before the court require this court to determine whether, and to what extent, specialized knowledge will assist the jury in its effort to determine facts pertinent to this case. Then it is necessary to decide whether this assistance justifies any dangers of unfair prejudice, confusion of issues, misleading the jury, undue delay, waste of time or needless cumulation of evidence.[1]

The extent to which an expert may assist the jury depends upon the substantive laws

---

[1] For present purposes it is assumed that the proposed witness is qualified, that his testimony will have the appropriate factual basis, and that his testimony rests on a reliable foundation.

involved as well as the extent to which the factual situation falls within the common experience and knowledge of the jurors. *In Re Aircraft Disaster at New Orleans, La., supra* at 1233; *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990). Plaintiffs' federal claims against Officer Leichliter are based on the Fourth Amendment.

The "search" and "seizure" of a free citizen is analyzed under the Fourth Amendment's "reasonableness" standard which is applicable to the states through the Fourteenth Amendment. *Graham v. Connor*, 109 S.Ct. 1865, 1870-1 (1989). Claims alleging excessive force by police officers are also analyzed under the Fourth Amendment "reasonableness" standard. *Graham v. Connor, supra.* Determining whether the force used to effect a particular search or seizure is "reasonable" under the Fourth Amendment requires a balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor, supra* at 1871. Thus, "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor, supra* at 1872 (internal citation & quotes omitted). Reasonableness is judged from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Graham v. Connor, supra.* Allowance is made for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving." *Graham v. Connor, supra.*

Expert testimony might assist the jury in understanding the alternatives to deadly force (pepper spray and nightstick) available to Officer Leichliter, and the effectiveness of those options. However, beyond that the proposed expert testimony as to whether Officer Leichliter's use of force was objectively reasonable under to totality of the circumstances will not provide meaningful assistance to the jury. A jury is fully capable of considering the circumstances and making a determination as to whether the use of force was reasonable under the circumstances.

Furthermore, even if it is assumed that such testimony would have some slight probative value it is clear that any probative value is far outweighed by " the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." F.R.E. 403. There is a real danger that the jury could end up believing that the ultimate issues before it are what the expert says they are. *In Re Air Crash Disaster at New Orleans, La., supra* at 1233. This court must and does insist that an expert bring more to the jury than a lawyer can offer in argument. *Id.*

Plaintiff has also brought a federal claim against the city.

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Department of Social Services of City of N.Y.*, 98 S.Ct. 2018, 2036 (1978); **Pembaur v. Cincinnati**, 106 S.Ct. 1292, 1297 (1986).

"A municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Monell* at 2036; *Collins v. Harker Heights*, 112 S.Ct. 1061, (1992).

. . . in enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the "moving force: behind the plaintiff's deprivation of federal rights. *Board of County Commissioners of Bryan County, Okla. v. Brown*, 65 USLW 4286 (1997).

Mr. Tucker's only opinion relative to municipal liability is his opinion that Chief Dixon's

failure to take corrective action *following* Officer Leichliter's use of force showed deliberate indifference to the safety of the public. This testimony is also excluded. First, Mr. Tucker's opinion is not likely to assist the jury in that a jury is fully capable of determining whether or not conduct is deliberately indifferent under the circumstances. Further, this testimony is likely to mislead and confuse the jury. Even if it is assumed that Chief Dixon's actions following the incident demonstrated deliberate indifference this after-the-fact action cannot be said to be a cause of the deprivation of rights complained of by plaintiffs.

Mr. Adams intends to testify as to the training received by Officer Leichliter relative to the use of deadly force, and to the policies of the police department relative to an officer's use of force. That testimony is admissible. Plaintiffs' objections to Mr. Adams' testimony on the basis that his report did not comply with Rule 26(a)(2)(B) are overruled. The information available to the court indicates that Mr. Adams was neither "retained or specially employed to provide expert testimony in the case" nor was he an employee regularly involved in giving expert testimony. Therefore, the requirements of 26(a)(2)(B) do not apply.

Plaintiffs remaining claims are based on state tort law. Liability of defendants will again turn on determinations of reasonableness under the circumstances. Officer Leichliter's defense to the battery claim is, in part, based on the privilege she enjoyed as a police officer to use reasonable force under the circumstances. Of course, any claim against the city or Officer Leichliter based on negligence will also turn of the reasonableness of the alleged tortfeasor's conduct.

Expert testimony as to the training received by Officer Leichliter relative to the use of deadly force and the department rules or policies relative to the use of deadly force might assist

5

the jury in determining whether the city was negligent relative to training and setting limits on the use of deadly force.[2] Otherwise, once again a jury is at least as capable as an expert in assessing the reasonableness of conduct under the circumstances, and the jury's consideration of the tort claims will not be aided by expert testimony. Further, any probative value that such expert testimony might have in this context is far outweighed by " the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

In summary, Mr. Tucker will be allowed to testify to the use and effectiveness of pepper spray and a nightstick. He will not be allowed to testify to other matters set forth in his report. Mr. Armbruster's testimony is similarly restricted. Mr. Adams will only be allowed to testify as to the training received by Officer Leichliter and as to the policies of the city relative to the use of deadly force. Otherwise, the motions are denied.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 30th day of November, 2004.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[2] A review of Mr. Tucker's report indicates that he does not intend to offer an opinion that the city's training or rules relating to the use of deadly force were inadequate.