RECEIVED
IN LAKE CHARLES, LA

APR 25 2007
*[signature]*
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| HEATHER LEHMAN, ET AL | : | **DOCKET NO. 03 CV 1432** |
| | : | |
| VS. | : | **JUDGE MINALDI** |
| | | |
| CHERYL LEICHLITER AND CITY | : | **MAGISTRATE JUDGE WILSON** |
| OF LAKE CHARLES | | |

### MEMORANDUM RULING

Before the court is defendant Officer Cheryl Leichliter's Renewed Motion for Judgment as a Matter of Law [doc. 86]. The motion is opposed by the plaintiffs [doc. 92].

### BACKGROUND

This action arises from the shooting death of William Lehman by Lake Charles City Police Officer Cheryl Leichliter. The decedent's immediate family members brought suit in the 14th Judicial District Court, State of Louisiana, against Officer Leichliter and the City of Lake Charles. Plaintiffs alleged, *inter alia*, that Officer Leichliter used excessive force in violation of William Lehman's constitutional rights. The plaintiffs also alleged that the City of Lake Charles was liable for constitutional deprivations under the theory of *respondeat superior* and that the City negligently hired, trained, and supervised Officer Leichliter.

A trial by jury was held from September 11, 2006 through September 13, 2006. At the close of the plaintiffs' case in chief and at the close of all evidence, the defendants moved for judgement as a matter of law. The first motion was granted as to the City of Lake Charles, and denied as to Officer Leichliter. The second motion was denied and the question of Officer Leichliter's liability was put to the jury. A mistrial was declared after the jury deadlocked and could not reach a

unanimous verdict.

## RULE 50(b) STANDARD

Judgment as a matter of law (JMOL) is properly granted in favor of the moving party when there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). "Judgment as a matter of law should only be granted if 'the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Coffel v. Stryker Corp.*, 284 F.3d 625, 630 (5th Cir. 2002) (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir.1994) (internal quotations omitted)).

"In considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh the evidence, as those are jury functions." *Brennan's Inc. v. Dickie Brennan & Co. Inc.*, 376 F.3d 356, 362 (5th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097 (2000)). "In reviewing the record as a whole, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (citation and internal quotations omitted).

If the court denies a JMOL motion at the close of all the evidence, the movant may renew its request post-trial. FED. R. CIV. P. 50(b). The prior declaration of a mistrial does not weigh against or preclude the subsequent grant of a motion for JMOL. *See, e.g.*, *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1197 (9th Cir.2000), *cert. granted and vacated on other*

2

*grounds by* 534 U.S. 801, 122 S.Ct. 24 (2001) ("A jury's inability to reach a verdict does not necessarily preclude a judgment as a matter of law."). A renewed motion for JMOL, pursuant to Rule 50(b), may be filed even if a mistrial has been declared. FED. R. CIV. P. 50(b) ("the court may...if no verdict was returned...direct entry of judgment as a matter of law.")

## ANALYSIS

### *Qualified Immunity*

Officer Leichliter argues that she is entitled to dismissal of the plaintiffs' constitutional claims on the basis of qualified immunity. This argument is premised upon the plaintiffs' alleged failure to establish that Officer Leichliter violated Matthew Lehman's clearly established constitutional rights. Even assuming Matthew Lehman was deprived of clearly established rights, Officer Leichliter asserts that her conduct was objectively reasonable in light of the situation on the night of the shooting.

The plaintiffs argue that this court already denied the defendant's motion for JMOL at trial and that the jury deadlock evidences the fact that "reasonable minds can disagree and have disagreed." The plaintiffs further assert that Officer Leichliter's use of force was not objectively reasonable, especially considering the nonlethal options the defendant had available.

First, as noted above, the fact that the jury deadlocked and a mistrial was granted does not preclude the court from granting defendant's renewed motion for JMOL. The same is true with respect to the court's denial of defendant's motion for summary judgment on the issue of qualified immunity.[1] The court will therefore focus its attention on whether Officer Leichliter is entitled to

---

[1] On a Rule 50 motion, the court is to give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached. However, since the summary judgment stage of these proceedings, some of the

qualified immunity on the basis of the evidence in the record.

Qualified immunity shields "government officials performing discretionary functions generally...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534 (1991), the Supreme Court held that the question of qualified immunity is ordinarily for the court, rather than the jury to decide. *Id.* at 228, 112 S.Ct. at 537.

To determine whether an officer is entitled to qualified immunity, the court employs a two-pronged test. The first prong asks whether the rights allegedly violated were clearly established at the time of the incident. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). The second prong inquires as to whether the officer's conduct was objectively reasonable. *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Hernandez ex rel. Hernandez v. Texas Dept. of Protective and Regulatory Services*, 380 F.3d 872, 879 (5th Cir. 2004) (citing *Lukan v. North Forest ISD*, 183 F.3d 342, 346 (5th Cir. 1999)).

With regard to the first prong, the Fifth Circuit has held that whether the law was clearly established is a question of law. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992) ("Whether the conduct of which the plaintiff complains violated clearly established law is an essentially legal

---

evidence has changed. For instance, one of the disputed facts relied upon in denying the defendants' motion for summary judgment was whether Officer Leichliter's eyesight was impaired. At trial, this factual dispute was resolved in favor of Officer Leichliter. The trial testimony of Dr. Sorrels and Officer Leichliter confirmed that Dr. Sorrels prescribed Officer Leichliter reading glasses. *See* Trial Tr. vol. 1 at 49-50, Sept. 11, 2006; Trial Tr. vol. 2 at 106-09, Sept. 12-13, 2006. Officer Leichliter therefore acted reasonably by not wearing glasses on patrol.

question."). As the court instructed the jury, "Matthew Lehman had a clearly established constitutional right to be free from the use of excessive force."[2] Indeed, the court maintains this position and finds that the alleged constitutional injury involved a clearly established right.

As to the second prong, in *Mangieri v. Clifton,* the Fifth Circuit concluded that the objective reasonableness prong is for the court, not the jury to decide. 29 F.3d 1012, 1015-16. They stated that "a district court errs in 'holding that the objective reasonableness prong of the qualified immunity standard is generally a factual question for the jury.'" *Id.* (quoting *Lampkin v. City of Nacogdoches,* 7 F.3d 430, 435 (5th Cir.1993)). However, the court went on to explain that where there is "a disputed question of fact," the issue of qualified immunity might still be resolved by the jury. *Id.* at 1016. "[E]ven though [*Hunter v. Bryant*] diminished the jury's role in qualified immunity cases, it did not entirely abolish it." *Id.* (quoting *Lampkin,* 7 F.3d at 430).

Regarding the conduct itself, the reasonableness of Officer Leichliter's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872 (1989). The objective reasonableness of the officer's conduct must also be viewed "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872. In addition, the trier of fact "must balance the amount of force used against the need for that force." *Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir. 1996) (citing *Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir. 1993)).

Uncontradicted trial testimony shows that on the evening of June 4, 2002, Officer Leichliter

---

[2] Jury Instructions 9.

was dispatched to an unfamiliar apartment complex in response to a 911 call.[3]  That 911 call, made by Matthew Lehman's sister, Heather Lehman, indicated that Mr. Lehman was drunk, disorderly, and attempting to beat her up.[4]  As Officer Leichliter made her way to Apartment 50, where Matthew Lehman resided, she received a call that shots had reportedly been fired at Apartment 54.[5]

When Officer Leichliter arrived in the vicinity of Apartment 50, she was met by Benjamin Ladner.[6]  Mr. Ladner testified that he informed Officer Leichliter that Matthew Lehman was intoxicated and unarmed, but that she might need to use pepper spray to subdue him.[7]

Shortly thereafter, Matthew Lehman, who was in the parking lot with his sister, charged Officer Leichliter, yelling unintelligibly.[8]  Officer Leichliter testified that she twice ordered Mr. Lehman to stop as he closed the gap between them.[9]  She also testified that, as he ran, Mr. Lehman reached into his waistband for what she thought might have been a gun.[10]  Fearing for her safety, Officer Leichliter fired three shots at Matthew Lehman.[11]  All eyewitnesses testified that this

---

[3] Tr. vol. 1 at 49-50; Defs.'s Ex. 6 (911 Transcript).

[4] Tr. vol. 1 at 49, 98; Defs.'s Ex. 6.

[5] Tr. vol. 1 at 50-51; Defs.'s Ex. 6.

[6] Tr. vol. 1 at 20, 52, 73; Tr. vol. 2 at 9.

[7] Tr. vol. 1 at 73, 85-86

[8] Id. at 26, 35, 48, 74, 85; vol. 2 at 8, 10.

[9] Tr. vol. 1 at 59.

[10] Id. at 56-57

[11] Id. at 27, 56-58; Pls.'s Ex. 11 (Autopsy Report).

sequence of events occurred within a matter of seconds.[12]

Confronted with an aggressive, intoxicated, and substantially larger[13] suspect running at her and a report that shots had been fired nearby, Officer Leichliter was forced to make a split-second decision regarding the use of deadly force. While Officer Leichliter was also armed with pepper spray and a baton, it was her belief that Matthew Lehman posed a threat of either serious bodily injury or death.[14] As Officer Leichliter was aware, the Lake Charles Police Department authorizes the use of deadly force when "[a]n officer reasonably believes that such force is necessary to protect himself or others from a significant and immediate threat of death or serious physical injury."[15]

Moreover, there was ample evidence that Matthew Lehman was acting unusually aggressive and disorderly prior to the shooting. As Mr. Lehman walked through the apartment complex corridors, he punched several windows, eventually breaking one.[16] When a tenant emerged from an apartment near where Mr. Lehman had broken a window, Mr. Lehman admonished him to the effect of "don't f--k with me."[17] There was also uncontradicted testimony that Mr. Lehman was running and screaming in the complex parking lot.[18] In short, as eyewitness testimony confirmed,

---

[12] Tr. vol. 1 at 57, 92; vol. 2 at 10.

[13] Tr. vol. 1 at 55 ;vol. 2 at 11; Pls.'s Ex. 11.

[14] Tr. vol. 1 at 56.

[15] Id. at 56; Defs.'s Ex. 1 at 7 (Use of Force Policy).

[16] Tr. vol. 1 at 99.

[17] Id.

[18] Id. at 85.

7

Matthew Lehman was out of control.[19]

The only trial evidence which significantly contradicted the propriety of Officer Leichliter's use of deadly force was the testimony of Melvin Tucker. Mr. Tucker, a former police chief and expert in police procedure, testified that Officer Leichliter improperly assessed the threat posed by Matthew Lehman.[20] Mr. Tucker also testified that, under the circumstances, Officer Leichliter could have effectively used a baton and/or pepper spray to subdue Mr. Lehman.[21]

The court, however, must take into account that Mr. Tucker assessed the situation with the 20/20 vision of hindsight. Mr. Tucker testified that in preparation for this case, he spent 40 to 50 hours reviewing depositions, interviews, crime scene photographs, and various other materials.[22] In contrast, Officer Leichliter was forced to decide in a matter of seconds whether to use deadly force.

Thus, viewing her conduct in light of these facts and circumstances, the court finds that Officer Leichliter's conduct was objectively reasonable. Officer Leichliter is therefore entitled to qualified immunity.

**State Law Claims**

Officer Leichliter also asserts that plaintiffs are unable to make out a prima facie case of negligence under Louisiana law. The defendant cites *Mathieu v. Imperial Toy Corp.*, 646 So.2d 318,

---

[19] Tr. vol. 1 at 83-84; Tr. vol. 2 at 3.

[20] Tr. vol. 2 at 31-41.

[21] *Id.*

[22] *Id.* at 18, 52-53.

for the proposition that officers are "not required to choose the 'best' or 'better' method of approach," but only a reasonable one.  Officer Leichliter contends that her use of force was reasonable under the circumstances. The defendant does not address the plaintiffs' claims for assault and battery.

As set out in the jury instructions, Louisiana's duty-risk analysis requires plaintiffs to establish five separate elements:

(1)     Officer Leichliter had a duty to conform her conduct to a specific standard of care (the duty element);

(2)     Officer Leichliter failed to conform her conduct to the appropriate standard (the breach of duty element);

(3)     Officer Leichliter's substandard conduct was a cause-in-fact of the plaintiffs' injuries (the cause-in-fact element);

(4)     Officer Leichliter's substandard conduct was a legal cause of the plaintiffs' injuries (the scope of liability or scope of protection element); and,

(5)     actual damages (the damages element). *See Goins v. Wal-Mart Stores, Inc.*, 800 So.2d 783, 788 (La. 2001).

With regard to the duty element, a police officer has a duty to act reasonably and only use as much force as is necessary under the totality of the circumstances. *Mathieu*, 646 So.2d at 322 (citing *Kyle v. City of New Orleans*, 353 So.2d 969, 972-73 (La. 1977)). To determine whether the officer acted reasonably under the circumstances the court considers the so-called *Kyle* factors. *Id.* at 322-33. These factors are: (1) the known character of the arrestee; (2) the risks and dangers faced by the

9

officers; (3) the nature of the offense involved; (4) the chance of the arrestee's escape if the particular means are not employed; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; and (7) the exigency of the moment. *Kyle*, 353 So.2d at 973.

Considering the factual scenario described above in light of the *Kyle* factors, the court finds that Officer Leichliter acted reasonably under the circumstances. As such, the court further finds that there is no legally sufficient evidentiary basis for a jury to find that Officer Leichliter acted negligently. Similarly, because Officer Leichliter's use of deadly force was reasonable and justified, there is no legally sufficient basis for a jury to find that she assaulted or battered Mr. Lehman. *See Mullins v. Pence*, 290 So.2d 803 (La.App. 1st Cir. 1974).

Accordingly, defendants' renewed motion for judgment as a matter of law will be granted.

Lake Charles, Louisiana, this ___24___ day of  April, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

10